UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FLOODBREAK, LLC,
    Plaintiff,

v.

ART METAL INDUSTRIES, LLC, et al.,
    Defendants.

No. 3:18-cv-503 (SRU)

## CLAIM CONSTRUCTION RULING

    Floodbreak, LLC ("Floodbreak") filed suit against Art Metal Industries, LLC ("AMI") and its principal owner, Kevin F. Biebel,[1] for patent infringement of United States Patent No. 9,752,342 ("the '342 patent"), pursuant to 35 U.S.C. § 271 *et seq.* Compl., Doc. No. 1, at ¶ 4. The '342 patent relates to a flood protection apparatus for underground air vents.

    Floodbreak and AMI have submitted claim construction arguments concerning three terms: (1) "stops", as used in independent claims 1, 22, 23, and 24 of the '342 patent, (2) "profile", as used in independent claims 1, 22, 23, and 24, and (3) "gravitational rotation", as used in independent claims 23 and 24. Floodbreak has generally argued against the need for claim construction, asserting that the claim language at issue has an ordinary meaning understood by a person of skill in the art, while AMI has generally argued for more narrow definitions of the terms at issue.

    For the reasons discussed below, I find that that the terms "stops" and "profile" do not require construction because they each have an ordinary meaning to those skilled in the art. I

---

[1] Throughout the ruling, I refer to AMI and Biebel collectively as "AMI".

find, however, that the term "gravitational rotation" does not have ordinary meaning to those skilled in the art, and thus requires construction. I construe that term below.

I.  **Background**

Floodbreak alleges that AMI directly infringed, and continues to infringe, one or more claims of the '342 patent" by making, using, offering to sell, and selling innovative Mechanical Closure Devices ("MCDs"), which are covered by the '342 patent, and which Floodbreak therefore owns. *Id.* at ¶¶ 8–10. MCDs are used in ventilation ducts and serve to block flooding water from entering underground ventilation passages in the New York City subway system. *Id.* at ¶ 10.

Floodbreak alleges that "AMI has copied Floodbreak's technology and partners with installers…to enter into contracts with the New York City Transit Authority to supply an MCD which has been represented as being 'equal to the specified Flood Break unit." *Id.* at ¶ 11. Floodbreak alleges that AMI continues to make, use, offer to sell, and sell Floodbreak's MCD units with full knowledge of infringement of the '342 patent. *Id.* at ¶ 19.

Floodbreak seeks a court order permanently enjoining AMI's infringing activities. *Id.* at 7. Floodbreak also seeks money damages as well as costs, expenses, and reasonable attorneys' fees. *Id.*

The complaint was filed on March 26, 2018. Doc. No. 1. On May 11, 2018, AMI filed an answer. Doc. No. 23. After a Rule 16 conference, a *Markman* claim construction hearing was scheduled. Doc. No. 28. A joint claim construction statement was filed by the parties on October 19, 2018. Doc. No. 35. A joint appendix of intrinsic evidence was filed by the parties on October 26, 2018. Doc. No. 36. Floodbreak and AMI filed opening claim construction briefs on November 19, 2018. Doc. Nos. 38 and 39. Both parties filed responses on December 18, 2018.

Doc. Nos. 41 and 42. Affidavits were filed by both parties on that same day. Doc. Nos. 43, 44, and 45. I held a hearing on January 8, 2019. Doc. No. 47.

## II. Claim Construction

As a general matter, the claims of a patent define the invention that a patentee is granted the right to exclude others from making or using, with the specification in a patent serving as a basic presentation teaching that invention. *See, e.g., Innova/Pure Water Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *Oak Technology Inc. v. International Trade Commission*, 248 F.3d 1316, 1328-29 (Fed. Cir. 2001). Courts construe claims in order to resolve ambiguities and to assign meaning to claims so that a patentee's right to exclude is clearly defined. *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004). Because the claims define an invention, limitations should not be read from the specification into those claims, but a claim should be read in light of the specification. *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186–87 (Fed. Cir. 1998). This can be difficult, because "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).

In *Phillips,* the Federal Circuit discussed, clarified, and re-affirmed principles of claim construction, providing courts with direction in the manner in which claims should be construed. First, the claims themselves provide substantial guidance about the meaning of particular claim terms. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[T]he context in which a term is used in the asserted claim can be highly instructive.... [T]he use of a term within the claim provides a firm basis for construing the term." *Phillips*, 415 F.3d at 1314. The use of a term in one claim can help demonstrate the meaning of that term in another claim, and

3

differences among claims can also guide understanding. *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). Notably, when a dependent claim adds a limitation that is not present in the claim on which it depends, the independent claim is presumed to be free of that limitation. *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).

Because claims are part of the patent as a whole, "claims must be read in view of the specification, of which they are a part." *Phillips,* 415 F.3d at 1315 (internal quotation marks omitted) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–81 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996)). That specification is "highly relevant to the claim construction analysis ... [and is] the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. The scope and construction of claims, then, is determined by "giving claims their broadest reasonable construction in light of the specification as it would be interpreted by one of ordinary skill in the art." *Phillips*, 415 F.3d at 1316 (internal quotation marks and citation omitted). In other words, the specification may indicate certain outer limits of a claim's scope, but that claim may be broader than the embodiments identified and discussed in a patent's specification.

Here, as discussed below, the specifications in the '342 patent are instructive regarding the meaning and proper construction of the claim terms "stops" and "profile". Therefore, I limit my discussion of those terms to the claims and their specifications, and do not consult the patents' prosecution histories or any extrinsic sources, such as dictionaries or trade publications. For the term "gravitational rotation", however, the prosecution history must be examined to reach a determination, as discussed below.

**III. Discussion**

Floodbreak has generally argued against the need for claim construction, asserting that the claim language at issue has an ordinary meaning understood by a person of skill in the art. *See Phillips*, 415 F.3d at 1316 (internal quotation marks and citation omitted). AMI has argued for a narrower interpretation of each of the disputed terms.

A. Stipulated Terms

The parties have stipulated to a construction of two terms: (1) "one or more panels mounted…for…rotation downwardly…solely by gravitational impetus on its own weight", as used in claim 1; and (2) "one or more panels mounted…for rotation…in gravitational rotation falling solely under the impetus of its own weight", as used in claim 22. Joint Disputed Claim Terms Chart, Doc. No. 35-1, at 2–4. Those stipulated terms are adopted.

B. "Stops"

The first issue is the meaning of the term "stops", which appears in independent claims 1, 22, 23, and 24. Joint Appendix of Intrinsic Evidence, Doc. No. 36-1, '342 Patent.

The Federal Circuit has held that "it will not read unstated limitations into claim language." *Rambus Inc. v. Infineon Techs AG*, 318 F. 3d 1081, 1088 (Fed. Cir. 2003). Furthermore, "[w]here the plain and ordinary meaning [of a term] is clear, no additional construction is necessary." *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015). In addition, "[u]sually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.

Here, Floodbreak contends that the term "stops" should be given its ordinary and customary meaning to a person of ordinary skill in the art, or, if construction is necessary, should be construed to mean "something that impedes, obstructs or brings [a panel] to a halt". Joint

Claim Construction Statement Exhibit A ("Claim Chart"), Doc. No. 35-1, at 2. AMI seeks to attach a more detailed interpretation and argues that I should construe the term to mean "rails that extend obliquely between two adjacent perpendicular walls of the support and are fastened to each wall, to prevent downward rotation of the panels or doors once they achieve the horizontal closed position." Claim Chart, Doc. No. 35-1, at 2.

The meaning of the term "stops" appears to be clear from its use in the claims, and is not limited to any particular illustration. For example, in the detailed description of embodiments, the patent states: "the concept of the invention is not limited to this disposition. Stops for stopping panel lowering may be positions to stop the downward travel above horizontal and still close a ventilation passage." Joint Appendix of Intrinsic Evidence, Doc. No. 36-1, '342 Patent, Column 8, lines 22-29. The specification shows that the stops bring a panel to a halt.

Although AMI contends that the narrower meaning that it proposes is "completely consistent with the claim language", that argument is unpersuasive because the Federal Circuit has held "it will not read unstated limitations into claim language." *Rambus Inc.*, 318 F. 3d at 1088. Because the ordinary meaning of the term "stops" is clear, additional construction is unnecessary. *See Summit 6, LLC*, 802 F.3d at 1291.

Furthermore, although AMI argues that the ordinary meaning of the term "stops" is "impermissibly broad" because the claim language "clearly prohibits" a stop being a support structure itself, I do not read the claim language as clearly prohibiting a stop as a support structure. Instead, a stop as a support structure could fall into the category of "within" the support structure itself, and therefore does not appear to be prohibited. *See* JA26, at claim 1, col. 14:20-22. In their Answering Claim Construction Brief, Defendants state that "Upon further review, Defendants acknowledge that there are other configurations that could satisfy this claim

language, such as 'rods' or 'I-beams' rather than 'rails,' and angles (e.g., perpendicular) other than oblique ones." Def's Answering Claim Construction Brief, Doc. No. 42, at 7 n.2.

The claims and the specification do not contradict the ordinary and customary meaning of the term "stops", and therefore the term does not require construction.

C. Meaning of the term "profile"

The next issue is the meaning of the term "profile", which appears in independent claims 1, 22, 23, and 24. Joint Appendix of Intrinsic Evidence, Doc. No. 36-1, '342 Patent. Floodbreak contends that the term "profile" should be given its ordinary and customary meaning to a person of ordinary skill in the art, or, if construction is necessary, should be construed to mean "the shape of a panel". Claim Chart, Doc. No. 35-1, at 2. AMI seeks to attach a more detailed interpretation and urges me to construe the term to mean "distal portion of each panel that has outer edges that match the shape of the passage defined by the sidewalls and wiping seal positioned around the outer edges of the respective panel and positioned between the panel outer edge and sidewall when closed to prevent any leakage of flood water into the vent." Claim Chart, Doc. No. 35-1, at 2.

AMI advocates for construction of the term "profile" that contains language that can be found in dependent claim 6, which contains the phrases "distal portion" and "said panels have rounded corners with a radius of curvature substantially the same as said first radius of curvature of the sidewall" and dependent claim 7, which contains the phrases "said panels include seals for sealing said passage".

Floodbreak is correct in asserting that there is a presumption that limitations that appear in dependent claims are not to be read into the independent claims on which they depend. *Phillips*, 415 F.3d at 1315.

In *Liebel-Flarsheim Co. v. Medrad, Inc.*, the court held that the presumption that limitations that appear in dependent claims should not be read into the independent claims from which they depend "can be overcome if the circumstances suggest a different explanation, or if the evidence favoring a different claim construction is strong." 358 F.3d 898, 910 (Fed. Cir. 2004). The court held that the doctrine of claim differentiation is "at its strongest" in a situation "where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim[.]" *Id.* (internal citation omitted).

In *Liebel-Flarsheim*, the court held that the presumption was unrebutted because the defendant did not offer an alternative explanation for why the limitations were found in the dependent claims but not in the corresponding independent claims. *Id.* Similarly, in the present case, AMI provides no alternative explanation regarding why the limitations can be found in the dependent claims but not in the independent claims.

Instead, AMI argues that a key sentence in the specification says that the rounded corners of the panels and the baseboards allow wiper seals to fully seal the perimeter of panels. Defendants' Opening Brief, Doc. No. 38, at 22–23. That statement, however, is in the preferred embodiment rather than in the independent claim. There are other possible ways to close the perimeter of the panels, without the "profile" including wiper seals, that are completely consistent with the claimed invention. Thus, because it is possible to accomplish closure of the device without sealing the panel, it is unnecessary to import a limitation from the specification that is not in the claim.

AMI argues that "a construction that renders the claimed invention inoperable should be viewed with extreme skepticism[.]" Defendants' Opening Brief, Doc. No. 38, at 24, citing *AIA Eng'g Ltd. V. Magotteaux Int'l S/A*, 657 F.3d 1264, 1278 (Fed Cir. 2011). But a construction

using ordinary meaning does not render the invention here inoperable. Although the meaning the AMI puts forth is more specific, an interpretation using the ordinary meaning of the term "profile that closes the passage" does not preclude sealing the passage so that water cannot pass through a gap. Therefore, the invention is not rendered inoperable and the ordinary meaning can be used here.

D. Meaning of the term "gravitational rotation"

At issue is the meaning of the term "in gravitational rotation falling from said upright home position to a lower passage closing position", which appears in independent claims 23 and 24. Joint Appendix of Intrinsic Evidence, Doc. No. 36-1, '342 Patent.

Floodbreak contends that the term "gravitational rotation" should be given its ordinary and customary meaning to a person of ordinary skill in the art, or, if construction is necessary, should be construed to mean "[t]he panels are mounted to rotate from a higher place to a lower place and fall using the force of gravity to rotate the panels downwardly". Claim Chart, Doc. No. 35-1, at 3. AMI seeks to attach a more detailed interpretation and urges me to construe the term to mean "[r]otation of the panels or doors of the MCD from an open vertical position to a closed horizontal position wherein the gravitational pull supplied by the weight of the panels is the only force that moves the panels in the direction of rotation toward the closed horizontal position." Claim Chart, Doc. No. 35-1, at 3.

"A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

9

AMI argues that in light of the narrowing amendments made by Floodbreak during patent prosecution, an open-ended construction of the term is inadequate and inconsistent with the term's specification and file history. Defendants' Opening Brief, Doc. No. 38, at 12–13.[2]

During prosecution, Floodbreak added "New" independent claims, 23 and 24. *See* JT APP00012–131. During the *Markman* hearing, Floodbreak argued that because claims 23 and 24 were new, they were never amended, and therefore were not narrowed. *Markman* Hearing Transcript, Doc. No. 46, at 23:2–6.

AMI argues that the '342 patent repeatedly describes operation of the assembly during its transition from the upright, vertical position to the horizontal, closed position as swinging due to the force of gravity alone. Defendants' Opening Brief, Doc. No. 38, at 13.

"[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term by implication. *Id.* at 14, citing *Bell Atl. Network Servs., Inc. v. Covad Communications Grp., Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (internal quotes and citations omitted).

However, during patent prosecution, the applicants were "very careful to distinguish their reasons for the patentability of claims 23 and 24 versus the reasons for patentability of Claims 1 and 22." Doc. No, 39, Plaintiff's Opening Brief, at 18. Floodbreak provides an example of the differentiation of claims: in a patent amendment submitted on October 6, 2014, Floodbreak differentiated between flood prevention by gravity and flood prevention by human action in claims 1 versus claims 23 and 24. *See* JT APP000143.

---

[2] During patent prosecution, Floodbreak amended the scope of its claims by adding the "solely by gravitational impetus of its own weight" limitation in a claim involving gravitational force. *See* Interview Request, dated August 11, 2016, with proposed amended claim 1, JA103-06, at JA105-06.

From examining the patent amendment language, that differentiation is clear. The doctrine of claim differentiation is "based on the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meaning and scope…." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999). Furthermore, "[t]he use of a term in one claim can help demonstrate the meaning of that term in another claim, and differences among claims can also guide understanding." *Clearwater Sys. Corp. v. Evapco, Inc.*, 553 F. Supp. 2d 173, 176 (D. Conn. 2008).

Although Floodbreak narrowed the scope of claim 1 in its 2016 proposed amendment, it did not do so for claims 23 and 24, and therefore AMI's suggested meaning of the term "gravitational rotation" cannot be applied generally throughout the patent. In addition, the "gravitational" language in claim 1 differs greatly from the language in claims 23 and 24. In claim 1, the panels are mounted for rotation upwardly to a home position "and rotation downwardly…*solely* by gravitational impetus on its own weight to a lower passage closing position." Doc. No. 36-1, at JT APP000026 (emphasis added). Claim 22 also uses the word "solely" regarding downward rotation of the panels: "in gravitational rotation falling *solely* under the impetus of its own weight…to a lower passage closing position." *Id.* at JT APP000027. Claims 23 and 24 do not use the term "solely" or "only". *Id.* at JT AP000027-28. Accordingly, one of ordinary skill in the art would not incorporate "only" in the definition of the phrase at issue.

Furthermore, even though the patent examiner stated that all pending claims, including claims 23 and 24, contained the language "solely by gravitational impetus", Notice of Allowability, Doc. No. 36-9, at JT APP000177, as discussed above, that statement is incorrect.

The Federal Circuit has held that the applicant's language should be afforded greater weight than the language used by the examiner. *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1332 (Fed. Cir. 2013) ("[w]e are guided by legal principles dictating that we rest on the statements by the patentee over conflicting statements of an examiner because it is the patentee's words that define the claim."). Here, the language used by the applicants in the amendment demonstrates that different kinds of force are meant to be used in specific patent claims.

Accordingly, AMI's proffered definition cannot be adopted.

Floodbreak argues that, in its reading of the patent, claims 23 and 24 would allow either the release to move the panels sideways to initiate gravitational force, or some other force would be permitted to move it sideways to get it to the point where gravity would allow it to fall. *Markman* Hearing Transcript, Doc. No. 46, at 20:14–21:3. That argument is supported by the prosecution history, and thus Floodbreak's proffered definition is adopted here.

## IV. Conclusion

For the foregoing reasons, I hold that the terms "stops" and "profile" do not require construction, and are given their ordinary meaning by one skilled in the art, and, in construing the term "gravitational rotation", I adopt the meaning put forth by Floodbreak, holding that "gravitational rotation" in the '342 patent means "[t]he panels are mounted to rotate from a higher place to a lower place and fall using the force of gravity to rotate the panels downwardly".

So ordered.

Dated at Bridgeport, Connecticut, this 8th day of July 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge