## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| FLOODBREAK, LLC,<br>        Plaintiff,<br><br>        v.<br><br>ART METAL INDUSTRIES, LLC,<br>and KEVIN F. BIEBEL,<br>        Defendants. | No. 3:18-cv-503 (SRU) |

### RULING ON PENDING MOTIONS AND ORDER

This case arises out of the alleged infringement of United States Patent No. 9,752,324 ("the '342 patent"), which is directed to a flood prevention apparatus that can be installed in a ventilation shaft.  As set forth in its complaint, FloodBreak, LLC ("FloodBreak"), the patent holder, alleges that Art Metal Industries, LLC ("AMI") and its principal owner, Kevin Biebel ("Biebel," and collectively, "Defendants"), are infringing multiple claims of the '342 patent by making and selling mechanical closure devices covered by the patent.  In this order, I address the pending motions in this proceeding, including: (1) FloodBreak's Motion for Default Judgment Against AMI and AMI's Motion to Set Aside the Entry of Default; (2) FloodBreak's Motion for Leave to Amend Its Complaint and Join Diego Trust, LLC As a Party Defendant; and (3) Diego Trust's Motion to Quash FloodBreak's Union Savings Bank Subpoena.

### I.    FloodBreak's Motion for Default Judgment Against AMI and AMI's Motion to Set Aside the Entry of Default

FloodBreak's moves for default judgment as to Art Metal Industries, Doc. No. 308, and AMI moves to set aside the entry of default, Doc. No. 347.  I deny FloodBreak's motion and grant AMI's motion.

A. <u>Background</u>

On March 26, 2018, FloodBreak filed the instant lawsuit alleging that AMI and Biebel willfully infringed the '342 Patent.  Compl., Doc. No. 1, at 5 ¶¶ 21-25.  On May 11, 2018, Defendants filed an answer.  Doc. No. 23.  On January 8, 2019, I held a Markman hearing, then issued an order rejecting Defendants' proposed claim constructions.  Docs. No. 47, 94.  Defendants then filed four summary judgment motions, which I denied in substantial part.  *See* Docs. No. 234-37 (denying in substantial part Docs. No. 60, 130, 142, 147).  On February 22, 2021, after concluding that there was probable cause that a judgment of $17,811,202 would enter in FloodBreak's favor, I granted in substantial part FloodBreak's motion for prejudgment remedy ("PJR").  PJR Order, Doc. No. 284.  After the PJR Order, Defendants' counsel moved for and were granted leave to withdraw.  Docs. No. 286, 295, 296 (granting Docs. No. 285, 293, 294).  Effective March 12, 2021, Defendants were unrepresented in the case at bar.  *Id.*

A month later, FloodBreak moved for an entry of default against AMI and Biebel.  Doc. No. 298.  Two days after that, Biebel entered an appearance as a self-represented party, Doc. No. 299, and AMI moved for an extension of time to retain new counsel, Doc. No. 300.  I denied FloodBreak's motion for an entry default with respect to Biebel, Doc. No. 305, and granted AMI thirty days to retain new counsel, Doc. No. 304.  After the thirty days expired, however, no attorney for AMI had made an appearance.  Accordingly, on June 8, 2021, I granted FloodBreak's motion for an entry of default against AMI.  Doc. No. 307.

On June 29, 2021, FloodBreak moved for a default judgment against AMI.  Doc. No. 308.

On December 14, 2021, Attorneys Sarah Burger and Douglas Skalka appeared as counsel for Biebel.  Docs. No. 330, 332.  Thereafter, on January 7, 2022, Attorneys Burger and Skalka filed a notice of appearance as counsel for AMI.  Docs. No. 345-46.  Through AMI's newly-

2

retained (or re-retained, in the case of Attorney Burger) counsel, the company moved to set aside

the entry of default and, for the first time, opposed FloodBreak's motion for default judgment.

Doc. No. 347.  FloodBreak timely objected.  Doc. No. 348.  AMI did not respond to

FloodBreak's objection.

Now before me are FloodBreak's motion for default judgment and AMI's motion to set

aside the entry of default.

B.  <u>Discussion</u>

1.  *Standard of Review*

Federal Rule of Civil Procedure 55(a) provides that a default may be entered against a

party against whom a judgment for affirmative relief is sought and who "has failed to plead or

otherwise defend." Fed. R. Civ. P. 55(a).  Rule 55(c) further provides that the Court may set

aside an entry of default for "good cause."  Fed. R. Civ. P. 55(c); *see also Marziliano v. Heckler*,

728 F.2d 151, 156 (2d Cir. 1984) ("A motion under Rule 55(c) to set aside an entry of default is

addressed to the sound discretion of the district judge.").   Rule 55(c) does not define "good

cause", but the Second Circuit has set forth three criteria to assess whether to relieve a party from

a default: "(1) whether the default was willful; (2) whether setting aside the default would

prejudice the adversary; and (3) whether a meritorious defense is presented."  *Enron Oil Corp. v.

Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

When a non-defaulting party moves for default judgment and the defaulting party moves

to set aside the default, the Court applies the *Enron Oil* factors.  *See Langer v. Astro Auto. Inc*.,

No. 3:11 CV 2005 CSH, 2012 WL 3463686, at *1 (D. Conn. Aug. 13, 2012) (cleaned up).

However, "[a]lthough the factors examined in deciding whether to set aside a default or a default

judgment are the same, courts apply the factors more rigorously in the case of a default

3

judgment, because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil Corp.*, 10 F.3d at 96.

2. *Discussion*

Since my order entering AMI's default, counsel for AMI has appeared, moved to set aside the entry of default, and opposed FloodBreak's motion for default judgment. Now that AMI has acted to "defend" itself in this proceeding, I must consider whether there is "good cause" to set aside the entry of default against AMI.

As I explained at the status conference, I believe justice is better served by full consideration of the merits with full participation of the parties. *See Enron Oil Corp.*, 10 F.3d at 96; 10A Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2693 (4th ed. 2016) (citing *Kalpprott v. United States*, 335 U.S. 601, 612 (1949)). Accordingly, as a threshold matter, I have a strong predisposition against ordering a default judgment. *Independent Productions Corp. v. Loews Inc.*, 283 F.2d 730, 733 (2d Cir. 1960) (counseling that "the entry of a judgment by default [is a] drastic remed[y], and should be applied only in extreme circumstances").

In this case, three additional considerations bolster my inclination in favor of setting aside the default and against ordering a default judgment.

First, the matter proceeds against other defendants, risking inconsistent judgments. *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) (a "final decree on the merits cannot be made separately against one of several defendants upon a joint charge against all, where the case is still pending as to the others"); *Davis v. Nat'l Mortgagee Corp.*, 349 F.2d 175, 178 (2d Cir. 1965).

Second, I have already concluded that there is probable cause that a judgment of $17,811,202 will enter in FloodBreak's favor. PJR Order, Doc. No. 284. AMI, therefore, may

4

be liable for a large sum of damages, which recommends my circumspection.  *See Sony Corp. v. Elm State Elecs., Inc*., 800 F.2d 317, 320 (2d Cir. 1986).

Third, the three *Enron Oil* factors weigh in AMI's favor.

    a.   Willfulness of Default

Whether a defendant's default was willful is a "subjective inquiry" that "effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." *Am. All. Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir. 1996) (footnote omitted).

AMI claims that its earlier failure to defend itself was due to its inability to afford counsel.[1]  FloodBreak argues that AMI's decision not to retain counsel is an inadequate reason as matter of law for setting aside an entry of default and, further, that AMI's finances were willfully strained by its "deliberate strategy" of transferring its funds to its holding company, Diego Trust LLC.  FloodBreak's Opp'n, Doc. No. 348, at 9-11.  I am sympathetic to FloodBreak's frustrations, especially in light of AMI's lack of any factual explanation for its failure to obtain counsel until the status conference, its failure to describe any good faith efforts to obtain counsel it could afford, and FloodBreak's allegations that AMI was willfully stripped of its assets.  However, I believe the precedent on which FloodBreak relies is distinguishable and that the willfulness element is a closer call than FloodBreak does.

FloodBreak relies on *King v. Galluzzo Equip. & Excavating Inc*. for its propositions that a "deliberate decision to default . . . is generally not excusable" and that "inability to hire new counsel does not serve as an excuse for default."  223 F.R.D. 94, 97 (E.D.N.Y. 2004) (cleaned up).  I agree that a deliberate decision to default is inexcusable, but I conclude that *King* is distinguishable on two bases.

---

[1] I note that AMI provided this explanation at a telephonic status conference and not in its papers.

One, Biebel's on-going participation in this litigation distinguishes the instant case from *King*. There, the court notified the individual defendant of his and his alleged alter ego corporation's default, but the defaulting individual defendant "made no effort" to appear *pro se*. In part on that basis, the court granted the plaintiff's requested default judgment. *Id.* at 96-97 (citing *Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 116 (S.D.N.Y. 1985)). Here, Biebel— whom FloodBreak charges is AMI's alter ego— has continued to participate in the case at bar.

Two, unlike *King*, I have not ordered a default judgment against AMI. Therefore, unlike the standard the already-defaulted defendants needed to meet in *King*, the bar is lower for AMI at this stage of the proceedings.

In my view, it is a close call, but the willfulness prong weighs slightly in AMI's favor.

   b.   Meritorious Defense

A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.*, 10 F.3d at 98. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id*.

AMI refers back to the affirmative defenses in its answer to assert, conclusorily, that a meritorious defense exists. Doc. No. 347 at 3 (citing Doc. No. 23, asserting eight affirmative defenses). FloodBreak counters AMI's statement of its defenses is too conclusory, that my subsequent rulings have extinguished AMI's defenses, and/or that AMI has waived its defenses. Doc. No. 347 at 11-13. I disagree.

Although it is true that I substantially denied Defendants' motions for summary judgment, I have not granted summary judgment to FloodBreak on its claims. Indeed,

6

FloodBreak has not moved for summary judgment; therefore, at this point in the proceedings, I consider it premature to conclude the Defendants have no meritorious defense.

I conclude that the meritorious defense prong weighs in AMI's favor.

### c.   Prejudice

"[D]elay standing alone does not establish prejudice." *Enron Oil Corp.*, 10 F.3d at 98. Rather, FloodBreak must demonstrate that the delay will have consequences, such as "the loss of evidence", "increased difficulties for discovery", or "greater opportunity for fraud and collusion." *Yan v. Bocar*, No. 04 Civ. 4194 (LAK), 2005 WL 3005338, *15 (S.D.N.Y. Sept. 30, 2005).

AMI asserts that FloodBreak will not suffer prejudice for the reasons identified in *Yan*. FloodBreak claims that it will be prejudiced, because it expended resources litigating against Biebel and by assisting self-represented Biebel to prepare for the adjourned January trial.

In my view, FloodBreak will not be substantially prejudiced.  Its factual allegations arise out of the Defendants' conduct related to the '342 patent.  FloodBreak's claims against AMI and Biebel are factually intertwined; as a result, there are no genuine concerns regarding prejudice relating to evidence.  As for opportunities for fraud and collusion, I have already granted FloodBreak a prejudgment remedy and will soon take up its pending motion to modify the prejudgment remedy.

Accordingly, the prejudice prong weighs in AMI's favor.

In conclusion, I **deny** FloodBreak's Motion for Default Judgment, Doc. No. 308, and **grant** AMI's motion to set aside the entry of default, Doc. No. 347, that I previously ordered against it, Doc. No. 307.

II.   **FloodBreak's Motion for Leave to Amend Its Complaint and Join Diego Trust, LLC As a Party Defendant**

FloodBreak's has moved for leave to amend its complaint and join Diego Trust, LLC ("Diego") as a party defendant.  I grant the motion.

   A.   Background

After issuing the PJR Order, I granted FloodBreak leave to conduct asset discovery.  Doc. No. 306.  In November 2021, FloodBreak served subpoenas on, *inter alia*, two banks at which non-party entity Diego Trust, LLC ("Diego") has or had accounts.  In response, Diego appeared as an interested party and moved to quash FloodBreak's subpoena on Union Savings Bank.  Docs. No. 318-19.

Soon after, FloodBreak moved to modify the PJR Order.  *See generally* Doc. No. 320.  It alleged therein that Diego was AMI's holding company, and that Defendants had willfully transferred a substantial share of their assets derived from their allegedly infringing conduct to Diego.  FloodBreak desired attachment of Diego's assets and an injunction ordering Diego to return Defendants' assets to their original accounts.  Diego objected, arguing that that neither statute nor precedent supported FloodBreak's sought-after PJR modification.  Diego's Opp'n, Doc. No. 327, a 1-5.  FloodBreak replied.  Doc. No. 329.

On December 17, 2021, I issued a ruling taking FloodBreak's motion to modify the PJR under advisement.  Although I was concerned that FloodBreak could not obtain complete relief without Diego's presence in this proceeding, I concluded that I likely could not grant FloodBreak's desired PJR modification unless Diego were a party defendant.  Doc. No. 334 at 6 ("Neither the face of the [PJR] statute nor precedent construing it would support such remedy against Diego."), 7 ("[I]t is not clear to me . . . [that] I could order what is, effectively, a mandatory injunction against non-party Diego.").  As a result, I ordered that FloodBreak show

cause why I could issue the relief sought if Diego were not a party defendant; in the alternative, I

indicated that FloodBreak could move the Court to join Diego as a party under Federal Rule of

Civil Procedure 19. *Id.* at 9. At the same time, hoping to hasten proceedings in light of the trial

scheduled to begin in less than a month's time, I ordered Diego to show cause why it should not

be joined. *Id.*

Both parties responded on December 22, 2021. In relevant part, Diego asserted that (1)

FloodBreak's request to join Diego would not be timely; (2) Diego is a "stranger" to

FloodBreak's patent infringement claims and, accordingly, its joinder "will add nothing to the

Plaintiff's ability to obtain complete relief;" (3) that Diego would be prejudiced by the tight

timeframe of proceedings concerning its joinder and the upcoming trial; and (4) that FloodBreak

could obtain relief by suing Diego at any time. Doc. No. 338 at 1-10.

FloodBreak requested leave to amend its complaint to state allegations against and moved

to join Diego. Doc. No. 339. Specifically, in its proposed amended complaint, FloodBreak

alleges that Diego is a holding company that wholly owns AMI and that Biebel is its Diego's

sole owner and member. Doc. No. 339-1 at 4 ¶ 14. FloodBreak further alleges that Diego, with

Biebel, infringed the '342 patent, "aided and abetted" AMI's infringement of '342 patent, and

induced others to infringe the '342 patent. *Id*. at 8 ¶ 27.

Now before me is FloodBreak's motion to amend its complaint and join Diego as a party

defendant.

B. Order Granting FloodBreak Leave to Amend its Complaint

1. *Standard of Review: Federal Rule of Civil Procedure 15(a)*

Federal Rule of Civil Procedure 15(a)(2) provides that, except when permitted to amend

as of right, "a party may amend its pleading only with the opposing party's written consent or the

court's leave" and that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15.

"[I]t is within the sound discretion of the district court to grant or deny leave to amend. . . ,"  and "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Nevertheless, both Rule 15 and precedent construing it favor granting leave to amend.  *Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits."); *Slayton v. Am. Express Co.*, 460 F. 3d 215, 288 (2d Cir 2006) (cleaned up) (holding that Rule 15 commands the court to "provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities").  Therefore, "the leave sought should, as the rules require, be 'freely given.'"  *Foman*, 371 U.S. at 182, and "[n]arrow pleading rules should not be applied to foil an honest plaintiff's efforts to gain redress," *Middle Atl. Utilities Co. v. S. M. W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir. 1968).

2.  *Discussion*

I grant FloodBreak leave to amend its complaint for good cause.

Diego argues that FloodBreak's attempt to obtain relief against it is "excessively tardy," Doc. No. 338 at 1, but delay standing alone is not a sufficient basis on which to deny leave to amend.  For example, in *Middle Atlantic Utilities Co.*, the Second Circuit held that even a "three-year delay from the filing of the initial complaint," as is the case here, "is an inadequate basis for denying a motion to amend."  392 F.2d at 384; *see also Applied Data Processing, Inc. v.*

*Burroughs Corp.*, 58 F.R.D. 149, 150 (D. Conn. 1973) ("[T]he mere fact that an amendment is offered late in the case is not enough to bar it if the other party is not prejudiced.").

In addition, Diego alleges that FloodBreak's motion to amend violates the scheduling orders in this proceeding.  Doc. No. 338 at 1.  Diego is correct that the original scheduling order in this case set a November 1, 2018 deadline to move to join parties and amend the pleadings. *Id.* (citing Doc. No. 29).  Therefore, to have timely moved to amend its complaint, FloodBreak must have done so two and a half years ago.  However, a scheduling order is also not a sufficient basis on which to deny leave to amend.  Rather, when a scheduling order is in place, the "lenient" Rule 15(a) standard "must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (citing Fed. R. Civ. P. 15(a), 16(b)).  FloodBreak establishes good cause to amend here.

The Second Circuit has held that good cause "depends on the diligence of the moving party."  *Grochowski*, 318 F.3d at 86 (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)).  Diego suggests FloodBreak was not diligent because it had Defendants' financial information, presumably indicating transfers to Diego, as early as November 2019 and "neglected to advance an argument regarding the purported need to add Diego Trust as a party" in the intervening two years.  Doc. No. 338 at 8.  But the record casts doubt on Diego's claim.

FloodBreak represents that it learned of the transfers to Diego as a result of asset discovery following the PJR Order.  *See* Opp'n to Diego's Mot. to Quash, Doc. No. 321 at 3.  I first granted FloodBreak leave to conduct asset discovery related to the PJR on June 8, 2021. *See* Doc. No. 306.  FloodBreak then engaged in the limited discovery authorized, deposing Biebel on September 1, 2021, Doc. No. 320-2, and reviewing Defendants' bank records, *see*

*generally* Doc. No. 320-3. According to Diego's motion to quash FloodBreak's subpoenas,

FloodBreak served Union Savings Bank with a subpoena as recently as November 2, 2021. Doc.

No. 319-1. In other words, the record indicates that FloodBreak's investigation arising from

asset discovery is recent. Thus, I do not have cause for concern regarding FloodBreak's

diligence.

In addition, there is no showing of substantial prejudice to Diego. At the time Diego filed

its response to my show cause order, a trial in this case was scheduled to begin in just three

weeks, or on January 11, 2022. However, pursuant to the Court's COVID-19 General Order re:

Jury Selections and Trials, I continued the trial until further order of the Court. *See* D. Conn.

Gen. Order re: Jury Selections & Trials, available at

https://ctd.uscourts.gov/sites/default/files/22-1_COVID-19-Order-Re-Jury-Selections-Trials.pdf.

Because I can exercise control over the scheduling of future proceedings, I am confident the

proceedings against Diego will not have to be rushed.

In sum, I **grant** FloodBreak's motion to amend its complaint, Doc. No. 339.

C. Order Joining Diego as a Party

I join Diego as a party defendant pursuant to the rules governing permissive joinder.

1. *Standard of Review: Federal Rules of Civil Procedure 19 and 20*

A plaintiff seeking to add a new defendant must satisfy the requirements of the rules

governing joinder of parties in addition to satisfying the Rule 15 standard. *See R & M Jewelry,*

*LLC v. Michael Anthony Jewelers, Inc*., 221 F.R.D. 398, 399 (S.D.N.Y. 2004). Under Rule

19(a), a person or entity must be joined as a necessary party if "in that person's absence, the

court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1). Under

Rule 20(a), two or more defendants may be joined in one action if "(A) any right to relief is

12

asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). Courts construe Rule 20(a) broadly "to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Roller Bearing Co. of Am., Inc. v. Multicut N. Am., Inc*., No. 3:18-CV-1212 (SRU), 2020 WL 8083668, at *2 (D. Conn. Oct. 14, 2020) (citation omitted).

### 2. *The Parties' Arguments*

FloodBreak moves the Court to join Diego as a necessary party, because Defendants have "willfully dissipat[ed] assets to Diego with the specific intent to frustrate the prejudgment remedy and shield proceeds from the infringing activity from FloodBreak. . . ." Doc. No. 339 at 1-2. Moreover, in its proposed amended complaint, FloodBreak alleges that Diego directly and contributorily infringed FloodBreak's patent. Am. Compl., Doc. No. 339-1 at 7 ¶ 25, 8 ¶ 27.

Diego repeatedly objects to FloodBreak's attempts to involve it in this litigation. In response to my order to show cause why it should not be joined, for example, Diego argues that it is a "stranger to the patent infringement claim" and that its joinder "will add nothing to the Plaintiff's ability to obtain complete relief pursuant to the allegations of the complaint." Doc. No. 338 at 4. Elsewhere, in its motion to quash, Diego asserts that it has "no connection" to the allegations in FloodBreak's original complaint; therefore, there is "no legal nexus" providing a basis for discovery of its financial records. Doc. No. 319 at 1-2.

### 3. *Discussion*

I conclude that FloodBreak sufficiently alleges basis for Diego's joinder under the rules governing permissive joinder, and I order Diego joined as a party defendant.

First, FloodBreak adequately pleads in its amended complaint that its right to relief is asserted jointly against Defendants, including Diego.  The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention" or "induces" others to do so "infringes the patent."  35 U.S.C. § 271(a)-(b).  The theory of infringement by active inducement is "a specific application of the principle of joint tort feasance," or joint liability.  5 Moy's Walker on Patents § 15:15 (4th ed.); *see also National Presto Industries, Inc. v. West Bend Co.*, 76 F.3d 1185, 1194 (Fed. Cir. 1996) ("The statutory liability for inducement of infringement derives from the common law, wherein acts that the actor knows will lead to the commission of a wrong by another, place shared liability for the wrong on the actor.").

Here, FloodBreak adequately pleads a right to relief asserted jointly by alleging that Defendants are liable under an inducement theory of patent liability relating to a common set of factual allegations.  Specifically, FloodBreak alleges that its right to relief arises from, *inter alia*, defendants Biebel and Diego's inducement of AMI and T. Moriarty & Son, Inc. to manufacture, use, offer for sale, and/or sell infringing mechanical closure devices and Defendants' inducement of the New York City Transit Authority to use infringing mechanical closure devices.  Doc. No. 339-1 at 8 ¶ 27.  Accordingly, FloodBreak satisfies the first prong of Rule 20(a).

Second, there can be no doubt from the face of FloodBreak's amended complaint that common questions of law and fact will arise, given the tight factual and legal nexuses alleged between AMI, Biebel, and Diego, and all three parties' allegedly infringing conduct.

Regarding common questions of fact, FloodBreak alleges a clear factual connection among the three parties: that Diego is a holding company that wholly owns AMI; that Diego is,

in turn, wholly owned by Biebel; and that Diego infringed the '342 patent, "aided and abetted"

AMI's infringement of '342 patent, and induced others to infringe the '342 patent.  *Id*. at 8 ¶ 27.[2]

The issue, then, is whether FloodBreak sufficiently alleges a legal basis for Diego's

joinder.  As a threshold matter, "[i]t is a general principle of corporate law deeply 'ingrained in

our economic and legal systems' that a parent corporation (so-called because of control through

ownership of another corporation's stock) is not liable for the acts of its subsidiaries."  *United

States v. Bestfoods*, 524 U.S. 51, 61 (1998).  A parent and subsidiary are "treated as separate and

distinct legal persons" even where the parent "owns all the shares in the subsidiary" and they

share "identical directors and officers."  *SFA Folio Collections, Inc. v. Bannon*, 217 Conn. 220,

232 (1991).  Nevertheless, the corporate veil is not impenetrable.  Rather, a parent company like

Diego may be liable for its subsidiary's patent infringement where the parent has itself engaged

in conduct giving rise to liability under 35 U.S.C. § 271 or where evidence "reveals

circumstances justifying disregard of the status [of the parent and subsidiary] . . . as distinct,

separate corporations."  *A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 596-97 (Fed.

Cir. 1988).

Here, in its proposed amended complaint, FloodBreak alleges both theories of liability

recognized by the Federal Circuit: that Diego engaged in unlawfully infringing conduct and that

Diego is liable as AMI's alter ego.  *See* Doc. No. 339 at 3, 6.

---

[2] I assess joinder based on the allegations in the complaint, but I note separately that FloodBreak's supplemental submissions flesh out its allegations.  Biebel readily acknowledged that Diego fully owned AMI, and that he is Diego's sole member.  Biebel Dep'n, Doc. No. 339-3 at 6-7.  Biebel also admits that proceeds from allegedly infringing activities were transferred from the AMI account to the Diego account.  *E.g. id.* at 12-13 (referring to payments from T. Moriarty & Son, Inc.); *see also* Kelly Decl., Doc. 320-3 (identifying dozens of transfers from AMI to Diego after Diego received payments arising from the allegedly infringing mechanical closure device sales).  Further, Biebel affirms that he viewed the transferred funds as AMI's funds.  *Id.* at 14.  Accordingly, I question whether Diego's assertion that it is has no factual connection to the allegations in the complaint is made is good faith.

a.   Diego's Alleged Liability for Direct and Contributory Infringement

FloodBreak alleges that Diego engaged in conduct giving rise to liability under 35 U.S.C.

§ 271.  As already explained, liability under section 271 arises when an individual or entity

"without authority makes, uses, offers to sell, or sells any patented invention" or "induces"

others to do so.  35 U.S.C. § 271(a)-(b).  In its proposed amended complaint, FloodBreak alleges

that Diego infringed the '342 patent, "aided and abetted" AMI's infringement of '342 patent, and

induced others, including T. Moriarty & Sons, Inc. and the New York City Transit Authority, to

infringe the '342 patent.  Doc. No. 339-1 at 7 ¶ 25, 8 ¶ 27.  Thus, FloodBreak alleges a basis for

Diego's liability for patent infringement.

b.   Diego's Alleged Alter Ego Liability

FloodBreak also alleges that Diego, like Biebel, is an alter ego of AMI.  Connecticut

recognizes two theories by which a corporate veil may be pierced and an alter ego found liable:

the "instrumentality" theory and the "identity" theory.  *RBC Bearings, Inc. v. Thin Section*

*Bearings, Inc.*, 2007 WL 2727160, at *1 (D. Conn. Sept. 18, 2007)*.*  FloodBreak alleges facts

supporting both theories of alter ego liability in its amended complaint, sufficiently establishing a

second legal basis for Diego's joinder.

i.   Instrumentality Theory

Under the instrumentality theory, a plaintiff must establish:

(1) "Control, not mere majority or complete stock control, but complete domination,
    not only of finances but of policy and business practice in respect to the
    transaction attacked so that the corporate entity as to this transaction had at the
    time no separate mind, will or existence of its own;"

(2) that "[s]uch control must have been used by the defendant to commit fraud or
    wrong, to perpetrate the violation of a statutory or other positive legal duty, or a
    dishonest or unjust act in contravention of [the] plaintiff's legal rights;" and

(3) that "the aforesaid control and breach of duty must proximately cause the injury
or unjust loss complained of."

*Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Group., Inc.*, 312 F. Supp. 2d 247,

257–58 (D. Conn. 2004) (citing *Zaist v. Olson*, 154 Conn. 563, 575 (1967)).

First, FloodBreak pleads that Biebel exercised the requisite level of control over AMI and

Diego.  Evaluating the requisite level of control, courts consider  "(1) the absence of corporate

formalities; (2) inadequate capitalization; (3) whether funds are put in and taken out of the

corporation for personal rather than corporate purposes; (4) overlapping ownership, officers,

directors, personnel; (5) common office space, address, phones; [and] (6) the amount of business

discretion by the allegedly dominated corporation."[3]  *Roth Staffing Companies, L.P. v. Brown*,

2016 WL 308773, at *4 (D. Conn. Jan. 25, 2016) (internal citations omitted).

FloodBreak's amended complaint supplements an existing record in this case, with which

I begin.  I have already determined that a reasonable juror could find that AMI operated with an

absence of basic corporate documents.  Doc. No. 236 at 14.  In addition, I have already

determined that a reasonable juror could find that AMI's funds were transferred out of the

corporation for personal rather than corporate purposes.  Doc. No. 236 at 14.  FloodBreak now

further pleads that AMI operated with inadequate capitalization, Doc. No. 339-1 at 6 ¶ 21; that

AMI and Diego had overlapping ownership and corporate leadership, *id.* at 3 ¶ 14; and that AMI

and Diego share an address, *id.* at 2-3 ¶¶ 2, 4.  Accordingly, FloodBreak provides sufficient

allegations to plead complete Diego's complete dominion over AMI.

Second, FloodBreak alleges that Defendants used their control to commit a wrong.

Specifically, FloodBreak alleges that Defendants "caused AMI to fraudulently and wrongfully

---

[3] As I noted in an earlier opinion, other factors subject to consideration are not relevant here.  *See* Ruling on Defs.'
Mot. for Summary Judgment, Doc. No. 236 at 13 n.7.

transfer at least $4,186,274.16 to Defendant Diego" on and after the point at which AMI received

notice of FloodBreak's patent infringement action.  *Id.* at 6 ¶ 21.  Without addressing the merits

of the allegation, I conclude that FloodBreak has pled use of control to commit a wrong.

Third, FloodBreak alleges that the transferring of assets occurred "in order to thwart

Plaintiff's recovery of any remedy or judgment it obtained," proximately causing an unjust loss.

*Id.*  Again, without ruling on the merits of the allegation, FloodBreak sets forth factual

allegations sufficient for pleading an instrumentality theory of alter ego liability.

In positing this theory, FloodBreak appropriately analogizes to *Minnesota Min. & Mfg.*

*Co v. Eco Chem, Inc.,* 757 F.2d 1256, 1257–59 (Fed Cir. 1985).  There, as I have previously

summarized, the defendants' founding officers stripped the infringing corporation of its assets

after the underlying patent infringement suit was filed, established a new corporation, and then

transferred the assets to the newly-formed corporation.  757 F.2d 1256, 1257-59 (Fed Cir. 1985).

The trial court determined that the officers and corporation were alter egos of the infringing

corporate defendant, and the Federal Circuit affirmed the decision on appeal.  *Id*. at 1265.

Taken together, then, FloodBreak alleges an additional legal nexus: alter ego liability

under an instrumentality theory.

ii.   Identity Theory

Under the identity rule  of alter ego liability, a plaintiff must show that: (1) "there was

such a unity of interest and ownership that the independence of the corporations had in effect

ceased or had never begun;" and (2) "an adherence to the fiction of separate identity would serve

only to defeat justice and equity by permitting the economic entity to escape liability arising out

of an operation conducted by one corporation for the benefit of the whole enterprise."  *Naples v.*

*Keystone Bldg. & Dev. Corp*., 295 Conn. 214, 232-33 (2010).

18

First, FloodBreak has sufficiently pleaded that there was a unity of interest and
ownership.  To establish dominion or control under the identity rule, courts consider the same
factors as when assessing the instrumentality rule.  *See Roth Staffing Companies, L.P.*, 2016 WL
308773, at *4.  The above analysis applies here, and I again conclude that Diego had the
requisite control over AMI.

Second, FloodBreak has sufficiently pleaded that the Defendants improperly used the
corporate form.  Specifically, FloodBreak alleges that Defendants "caused AMI to fraudulently
and wrongfully transfer at least $4,186,274.16" to Diego on and after the point at which AMI
received notice of FloodBreak's patent infringement action, in order to stymie FloodBreak's
ability to recover a judgment.  Doc. No. 339-1 at 6 ¶ 21.

Thus, FloodBreak alleges facts supporting both prongs of the identity theory of alter ego
liability and pleads an additional legal nexus.

    c.   Countering Counterarguments

Although requesting more time to respond to FloodBreak's motion to amend its
complaint and join Diego, none of AMI, Biebel, or Diego filed an objection.  But, in its response
to my show cause order, Diego raised relevant arguments that I choose to address here.  Doc. No.
338.  None of Diego's arguments undermine my conclusion that it should be joined.

Diego disputes its joinder on the procedural ground that the Court must "base its decision
on the pleadings as they appear at the time of the proposed joinder" and, at the time of Diego's
writing, FloodBreak had not yet moved to amend its complaint.  Doc. No. 338 at 5; *see also
Associated Dry Goods Corp. v. Towers Fin. Corp*., 920 F.2d 1121, 1124 (2d Cir. 1990).  At the
time Diego filed its papers, I credited this argument.  But FloodBreak has since moved to amend

its complaint, and I now proceed by assessing the allegations regarding Diego's liability therein. Thus, Diego's procedural claim is unavailing at the present stage of the proceedings.

Diego asserts that it is a stranger to the patent infringement claims. *Id.* at 4. I have already determined FloodBreak sufficiently cast doubt on such assertion, because FloodBreak sufficiently alleges Diego's liability for patent infringement and as an alter ego.

Diego further argues, without elaboration, that its inclusion will "add nothing" to FloodBreak's ability to obtain complete relief. *Id.* FloodBreak argues that if Diego is not joined as a party to this action despite liability as an infringer and alter ego, FloodBreak will be unable to attach "any significant assets" to secure a judgment consistent with the awarded prejudgment remedy. Doc. No. 339 at 5. Because I concluded that I could not modify the prejudgment remedy to attach non-party Diego's assets nor issue a mandatory injunction that non-party Diego return proceeds arising from allegedly infringing activities, I am sympathetic to FloodBreak's conclusion that it cannot obtain complete relief if Diego is not made a party. *Id.* However, having found a sufficient basis to join Diego permissively, I decline to reach the question whether Diego must be joined as a necessary party. Nevertheless, I dispute Diego's claim that its joinder is without any value, both for the foregoing reasons *and* in light of the allegedly unlawful transfers of AMI's funds to its and AMI's ensuing insolvency.

Similarly, Diego points to the fact that it was not a party to a contract, by which I infer it Diego argues that it did not contract with the entities that FloodBreak alleges the Defendants induced to infringe the '342 patent. But FloodBreak's proposed amended complaint raises allegations that Diego directly infringed and induced others to infringe, by itself and as AMI's alter ego in its allegedly infringing activities. On any of those two bases, AMI's contracts can be imputed to Diego.

In sum, I am unpersuaded by Diego's counterarguments.

I **grant** FloodBreak's motion to amend its complaint and join Diego.  FloodBreak shall file the amended complaint as a new docket entry.

### III.   Diego Trust's Motion to Quash FloodBreak's Union Savings Bank Subpoena

Diego moved to quash a subpoena FloodBreak served on financial service provider Union Savings Bank in large part because Diego was not then a party to this litigation.  *See generally* Doc. No. 319.  Now that Diego has been joined, there is no basis for Diego to object based on its non-party status.  Because I conclude that the information sought is permissible under Federal Rule of Evidence 45 and find Diego's other arguments to be without merit, I **deny** Diego's motion to quash the subpoena.

### IV.   Conclusion

In sum:

- Doc. No. 308, FloodBreak's Motion for Default Judgment Against Art Metal Industries, is denied.
- Doc. No. 319, Diego Trust's Motion to Quash, is denied.
- Doc. No. 320, FloodBreak's Motion to Modify PJR and Order for Injunctive Relief, will remain pending until fully briefed.
- Doc. No. 339, FloodBreak's Motion to Join Diego Trust, LLC as a Party Defendant and Request for Leave to Amend Complaint, is granted.
- Doc. No. 340, FloodBreak's First Motion In Limine, is held in abeyance.
- Doc. No. 341, FloodBreak's Second Motion in Limine, is held in abeyance.
- Doc. No. 347, AMI's Motion to Set Aside Default, is granted.

In addition, in a separate motion, FloodBreak has moved to modify the PJR Order to allow attachment of Diego's assets and to enjoin Biebel and AMI with respect to transferring assets.  Doc. No. 320.  Diego argues that it would be denied due process if it were joined and then immediately subject to the PJR.  Doc. No. 338 at 2 (citing *Connecticut v. Doehr*, 501 U.S. 1, 18 (1991)).  I agree.  Now that FloodBreak has amended its complaint to state allegations against

Diego and I have joined it as a party, the parties shall meet and confer regarding a revised case management plan and submit the proposal, which should incorporate briefing regarding modification of the prejudgment remedy, no later than one week from the date of this order.

The proposed case management plan should include that the parties agreed at the status conference to August 4, 2022 for jury selection, with the rescheduled trial to begin August 22, 2022.  I hereby set July 23, 2022 as the deadline for filing an updated joint trial memorandum.  If Defendants intend to raise a prior art defense, they shall serve a prior art statement on FloodBreak by thirty days before the start of the trial, or July 23, 2022.  *See* 35 U.S.C. § 282(c). In the interim, I hold FloodBreak's pre-trial motions in limine, Docs. No. 340-41, in abeyance.

So ordered.

Dated at Bridgeport, Connecticut, this 4th day of March 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge